ORDER
 

 King appeals from a decision of the Bankruptcy Appellate Panel, affirming in part and reversing and remanding in part a decision of the bankruptcy court. We dismiss the appeal for lack of jurisdiction.
 

 I. BACKGROUND AND PROCEEDINGS BELOW
 

 In April 1977, Karen Stanton and T.O. King formed a partnership to purchase and resell a mansion in Montecito, California, called “Tara” (after the mansion in “Gone With the Wind”). Under the partnership agreement, King and Stanton each had equal ownership in the property. Stanton received rent-free occupancy of Tara, and was obligated to make the debt, tax, and insurance payments on it. The agreement further provided that if Stanton failed to make these payments, King had the option of making them' himself, with his percentage ownership increased by 1.4% for every $1,000 he paid out.
 

 In July 1977, King advanced Stanton $3,000, the parties agreeing that partnership interests would be adjusted accordingly. In August, Stanton notified King that she would not be able to make her payments for the month, so King made them. During' this time, Stanton told King that she felt the time and money she was putting into improving the property were worth more than payment of the debt, tax, and insurance obligations. Stanton contends, and the bankruptcy court found, that the parties orally agreed that she would make the improvements required and that King would pay the obligations without any further reduction in Stanton’s partnership interest.
 

 After August, King made all the payments on the property, without notifying Stanton that he was doing so. Finally, in May 1978, King announced to Stanton that, because of the payments he had been making, he had acquired 100% ownership of the Tara property. Stanton denied this.
 

 In March 1978, Stanton offered to buy out King’s interest in the partnership, but King did not respond. After May, King refused several offers from third parties to buy Tara, although he did agree to accept one offer for $576,000, if Stanton would agree that she was entitled to only $31,470
 
 *1285
 
 of the proceeds. Stanton refused these terms, and the property remained unsold.
 

 King filed suit in state court, seeking dissolution of the partnership and an accounting. Stanton filed a counterclaim, contending that King’s refusal to accept the buy-out offer she made and his rejection of the other offers to purchase the property constituted fraud and breach of the partnership agreement. Later, Stanton filed for bankruptcy, and the case was removed from state court to the bankruptcy court.
 

 The bankruptcy court found that the parties had orally modified the partnership agreement. The court dissolved the partnership, declaring that King had a 57.72% interest and Stanton had a 42.28% interest. The court also denied Stanton’s counterclaim, but it did so without any findings or discussion.
 
 [1]
 

 Both parties appealed to the Bankruptcy Appellate Panel (“BAP”). The BAP affirmed the trial court’s judgment concerning the partnership interests, but reversed and remanded the dismissal of Stanton’s counterclaim.
 
 In re Stanton,
 
 38 B.R. 746 (Bankr. 9th Cir.1984). The BAP concluded that Stanton’s counterclaim had support in the record.
 
 Id.
 
 at 753-54. It remanded for further consideration by the bankruptcy court.
 
 [2]
 

 Id.
 
 at 754.
 

 King then timely appealed to this court.
 

 II. DISCUSSION
 

 Under section 158(d) of Title 28, we have jurisdiction to hear appeals “from all final decisions, judgments, orders, and decrees” entered by a district court or a bankruptcy appellate panel on appeal from a bankruptcy court.
 
 [3]
 
 The issue before us in this case is whether the decision of the BAP was final.
 

 Our cases addressing appellate jurisdiction in the bankruptcy context suggest that the finality issue must be examined at two levels. We look, first, to see whether the order of the bankruptcy court was final,
 
 see, e.g., In re King City Transit Mix, Inc.,
 
 738 F.2d 1065, 1066-67 (9th Cir.1984) (per curiam);
 
 In re Mason,
 
 709 F.2d 1313, 1315-16 (9th Cir.1983);
 
 In re Rubin,
 
 693 F.2d 73, 76 (9th Cir.1982), and second, to whether the decision of the BAP
 
 [4]
 
 is final,
 
 see, e.g., In re Teleport Oil Co.,
 
 759 F.2d 1376, 1377-78 (9th Cir.1985);
 
 In re Sambo’s Restaurants, Inc.,
 
 754 F.2d 811, 813-15 (9th Cir.1985);
 
 In re Martinez,
 
 721 F.2d 262, 264-65 (9th Cir.1983). Both decisions must be final.
 
 [5]
 

 We apply a “pragmatic approach” to decide whether the bankruptcy court’s order is final.
 
 In re Mason,
 
 709 F.2d at 1318. Recognizing “the unique nature of bankruptcy procedure,”
 
 id.
 
 at 1316, we
 
 *1286
 
 have concluded that “certain proceedings in a bankruptcy case are so distinctive and conclusive either to the rights of the individuals or the ultimate outcome of the case that final decisions as to them should be appealable as of right,”
 
 id.
 
 at 1317.
 

 In this case, we have no difficulty concluding that the order of the bankruptcy court was final. The court decided King’s claims for dissolution of the partnership and settled the accounting between the partners. The court also dismissed Stanton’s counterclaim. The bankruptcy court’s order left nothing to be resolved between the partners; it ended the adversary proceeding, and was therefore a final order.
 
 See In re Four Seas Center, Ltd.,
 
 754 F.2d 1416, 1418 (9th Cir.1985);
 
 In re Ellsworth,
 
 722 F.2d 1448, 1450 (9th Cir.1984).
 

 The more difficult issue is whether the decision of the BAP was final. The problem is whether the .BAP’s partial reversal and remand destroys the finality of the bankruptcy court’s order. Two recent Ninth Circuit cases,
 
 In re Sambo’s Restaurants, Inc.,
 
 754 F.2d at 811, and
 
 In re Martinez,
 
 721 F.2d at 262, inform our decision.
 

 In
 
 Sambo’s,
 
 754 F.2d at 811, Sambo’s filed a Chapter 11 petition, and while the automatic stay was in effect, a wrongful death action was filed against Sambo’s in another court. The wrongful death action was dismissed, and the plaintiff failed to file a formal proof of claim against Sam-bo’s in the bankruptcy proceeding before the bar date. She argued, however, that her wrongful death action served as an informal proof of claim. The bankruptcy court rejected this argument, but the district court reversed. On appeal, we concluded that:
 

 Although [a] case-by-case approach may make sense when the original appeal from the bankruptcy court is interlocutory, here we have a final bankruptcy court order which resulted in a non-final district court order on review. Under these circumstances, we embrace the views of the Third and Eighth Circuits which hold that “when the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court’s order is also a final order for purposes of section 1293(b).”
 
 In re Marin Motor Oil, Inc.,
 
 689 F.2d 445, 449 (3d Cir.1982),
 
 cert. denied,
 
 459 U.S. 1206 [103 S.Ct. 1196, 75 L.Ed.2d 440] (1983); . . .
 
 accord In re Bestmann,
 
 720 F.2d 484, 485-86 (8th Cir.1983). . . .
 

 Id.
 
 at 814;
 
 accord In re Pizza of Hawaii, Inc.,
 
 761 F.2d 1374, 1378 (9th Cir.1985).
 

 In
 
 Martinez,
 
 721 F.2d at 262, Dental Capital held a judgment against Mr. Martinez. It recorded the judgment, making it a lien against the Martinez residence. Shortly afterward, Mr. and Mrs. Martinez filed for bankruptcy. Dental Capital brought an adversary proceeding in the bankruptcy court, which held that the lien was postponed to the amount of the Martinez’s state and federal homestead exemptions. The court also lifted the stay to permit a forced sale of the Martinez residence. Dental Capital appealed to the BAP, which affirmed the determination of the priorities of the lien and the homestead exemptions. Additionally, the BAP vacated the bankruptcy court's order and remanded for a determination of whether the house was community or joint property, and whether Mr. Martinez’s interest in the property was sufficient to allow Dental Capital to foreclose. Dental Capital appealed to this court, and we dismissed for lack of jurisdiction.
 

 We stated that although a “pragmatic approach” to finality is appropriate, “[w]e see no reason not to apply [traditonal] finality standards to remands for factual determinations in the bankruptcy context.”
 
 Id.
 
 at 265 (citations omitted). We noted that the BAP had remanded for clarification of “a central issue in the case,”
 
 [6]
 
 and
 
 *1287
 
 that courts traditionally have not considered remands final decisions because of the policy disfavoring piecemeal appeals.
 
 Id.
 

 At first glance,
 
 Sambo’s
 
 and
 
 Martinez
 
 seem difficult to reconcile, but, in fact, the cases complement one another.
 
 Sambo’s
 
 holds that when a bankruptcy court issues a final order, and the BAP affirms or reverses, its order is final.
 
 Sambo’s,
 
 754 F.2d at 814.
 
 Martinez
 
 holds that when the BAP
 
 remands
 
 for further factual findings related to a central issue raised on appeal, that order is not final, and we lack jurisdiction.
 
 Martinez,
 
 721 F.2d at 265.
 
 [7]
 

 In
 
 Sambo’s,
 
 we noted that one purpose of the finality rule is to maintain the proper relationship between trial and appellate courts,
 
 Sambo’s,
 
 754 F.2d at 814, a relationship that is complicated by interposition of an intermediate appellate tribunal. A principal concern is to maintain the trial court’s role as a fact-finder. If the BAP affirms or reverses a bankruptcy court’s final order, it presumably has determined that all the necessary fact-findings have been made. The
 
 Sambo’s
 
 result is entirely appropriate in such a case. But if the BAP remands for factual development and we take jurisdiction before that process is concluded, we interfere with the bankruptcy court’s fact-finding role. Moreover, we are likely to be faced with an inadequate factual record, making it difficult to identify the controlling legal issues,
 
 see In re Marin Motor Oil, Inc.,
 
 689 F.2d 445, 449 (3d Cir.1982), and we may be required to do exactly what the BAP did, i.e., remand for factual development.
 

 We emphasized in both
 
 Sambo’s,
 
 754 F.2d at 815, and
 
 Martinez,
 
 721 F.2d at 265, that the finality rule is intended to save time and resources, both ours and the parties’. If an appeal is taken from a final order of the bankruptcy court and we agree with that court, the litigation is at an end, irrespective of the intervening decision of the BAP.
 
 Sambo’s,
 
 754 F.2d at 814. If the BAP remands for factual development, however, a significant possibility exists that this court would agree that remand is necessary, thus adding at least one step in the appellate process-. ' And if, after remand, one of the parties were to decide to appeal a second time to the BAP and to this court, two complete trips through the appellate process would result, where otherwise there would have been only one. When a remand is involved, the appellate
 
 *1288
 
 process likely will be much shorter if we decline jurisdiction and await “ ‘ultimate review on all the combined issues.’ ”
 
 Martinez,
 
 721 F.2d at 265 (quoting
 
 Barfield v. Weinberger,
 
 485 F.2d 696, 698 (5th Cir.1973));
 
 see also In re Riggsby,
 
 745 F.2d 1153, 1157 (7th Cir.1984).
 

 The case before us is controlled by
 
 Martinez.
 

 [8]
 

 The bankruptcy court made no findings on Stanton’s counterclaim; in fact, it did not even mention the counterclaim in its memorandum of decision. At trial, the parties disputed many factual issues related to the counterclaim, e.g., whether the offers King refused (or failed to respond to) were bona fide, what return those offers would have given to King on his investment, and whether King had been sufficiently assured of payment of the purchase price offered.
 
 [9]
 
 The trial court made no findings on these issues, nor did it issue findings on ultimate issues such as whether King acted reasonably, whether he was obligated under the partnership agreement to consider or accept the offers, and whether King acted in good faith.
 

 In its reversal and remand of the counterclaim, the BAP did not decide that the record compelled a result in favor of Stanton, it simply noted that some of the bankruptcy court’s findings suggest that Stanton’s counterclaim might have merit. 38 B.R. at 754. The BAP simply could not resolve the counterclaim without additional findings of fact, and likewise, we cannot resolve it without these findings.
 

 If we were to take jurisdiction in this case, arguably we could decide some of the issues raised. For instance, we perhaps could decide whether the bankruptcy court erred in concluding that the partnership agreement had been modified; the additional factfinding directed by the BAP likely would not affect that issue. But
 
 Martinez
 
 teaches, and prudent appellate procedure requires, that we not sever some issues that we can decide from those that we cannot decide. Instead, we should take a case as a whole, whenever possible. As in
 
 Martinez,
 
 721 F.2d at 265, we see no reason not to apply traditional finality principles here.
 

 III. CONCLUSION
 

 Because the BAP remanded to the bankruptcy court for further factual findings relating to a central issue raised on appeal, we have no jurisdiction. Accordingly, we dismiss this appeal.
 

 APPEAL DISMISSED.
 

 [1]
 

 . The court did not mention the counterclaim in its memorandum decision, but stated simply in its judgment that "all other causes of action and claims made by the parties in this action are denied.”
 

 [2]
 

 . The BAP’s decison stated, "[W]e ... hold that the cross-claim for damages should have been given consideration and remand it so that, depending on the funds received from the sale of the property, the Court may consider whether and to what extent Ms. Stanton is entitled to damages.” 38 B.R. at 754.
 

 [3]
 

 . The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 104(a), 98 Stat. 333, 341, replaced former section 1293(b) of Title 28 with new section 158(d). The Bankruptcy Amendments became effective July 10, 1984, and are to be applied to cases pending as of that date.
 
 Id.
 
 § 553(b), 98 Stat. 333, 392. Accordingly, we cite to new section 158(d) here. However, our decisions regarding finality under former section 1293 are controlling in cases arising under new section 158.
 
 In re Teleport Oil Co.,
 
 759 F.2d 1376, 1377 n. 1 (9th Cir.1985).
 

 [4]
 

 . Of course, the intermediate appellate tribunal may be a district court rather than the BAP, but under section 158, the finality issue is the same as to both. For simplicity, throughout this disposition we refer to the BAP only.
 

 [5]
 

 . Section 158 permits interlocutory orders to be appealed to district courts, 28 U.S.C. § 158(a) (formerly 28 U.S.C. § 1334(b), and bankruptcy appellate panels, 28 U.S.C. § 158(b)(1) (formerly 28 U.S.C. § 1482(b)), with leave of court, but such orders are not appealable to this court.
 
 See In re Pizza of Hawaii, Inc.,
 
 761 F.2d 1374, 1378 (9th Cir.1985);
 
 In re Mason,
 
 709 F.2d 1313, 1315 (9th Cir.1983).
 

 [6]
 

 . We said, "The form of tenancy in which Mr. and Mrs. Martinez hold their residence is critical to a determination of the rights of all the parties to this litigation.” 721 F.2d at 265. The form of tenancy was important because it would dictate whether Dental Capital could
 
 *1287
 
 foreclose on the property.
 
 See id.
 
 at 264;
 
 Schoenfeld v. Norberg,
 
 11 Cal.App.3d 755, 90 Cal.Rptr. 47 (1970).
 

 [7]
 

 . One case,
 
 In re Riggsby,
 
 745 F.2d 1153, 1155 (7th Cir.1984), suggests that the rule we adopted in
 
 Sambo's
 
 is inconsistent with our earlier holding in
 
 Martinez.
 
 In
 
 Riggsby,
 
 the Seventh Circuit criticized
 
 In re Marin Motor Oil, Inc.,
 
 689 F.2d 445, 448 (3d Cir.1982),
 
 cert. denied,
 
 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983), the case
 
 Sambo’s
 
 followed, and found the result in
 
 Martinez
 
 “very sensible]". 745 F.2d at 1155. The Seventh Circuit concluded, and apparently interpreted
 
 Martinez
 
 to mean, that a district court’s order is not final if it remands the case to the bankruptcy court “for significant further proceedings."
 
 Id.
 
 at 1156. Recently, in
 
 In re Four Seas Center, Ltd.,
 
 754 F.2d at 1416, our court described the holding in
 
 Martinez
 
 similarly, stating in dicta that we lack appellate jurisdiction ”[w]hen further proceedings in the bankruptcy court will affect the scope of the order.”
 
 Id.
 
 at 1418.
 

 If
 
 Martinez
 
 were read as the Seventh Circuit suggested in
 
 Riggsby
 
 or if our statement in
 
 Four Seas
 
 were taken literally, perhaps
 
 Martinez
 
 and
 
 Sambo's
 
 would be inconsistent with one another. An outright reversal and remand by the BAP ordinarily will fall within the
 
 Sambo’s
 
 rule, even though it would entail “further proceedings" that likely would affect the scope of the bankruptcy court’s order. But we conclude that
 
 Martinez
 
 cannot be read as broadly as
 
 Riggsby
 
 or
 
 Four Seas
 
 might suggest. The key to our holding in
 
 Martinez
 
 was that the BAP remanded
 
 for further factual findings.
 
 We emphasized this aspect of the
 
 Martinez
 
 holding when we decided
 
 In re White,
 
 727 F.2d 884, 886 (9th Cir.1984), which, like
 
 Martinez,
 
 involved a district court reversal disallowing a claimed homestead exemption. We held that jurisdiction was proper in
 
 White
 
 and distinguished
 
 Martinez
 
 as follows:
 

 In
 
 Martinez,
 
 the BAP did not allow or deny the exemption; it remanded for further findings on that issue. We explicitly relied upon the fact that the BAP remanded in concluding that the order was not final. The district court order in the present case finally determined all issues regarding the claimed exemption.
 

 Id.
 
 at 886 (citation omitted).
 

 [8]
 

 . If the BAP remanded for fact-findings, but the case involved a central legal issue, the resolution of which would dispose of the issues raised and obviate the need for the fact-finding, that might be an instance in which we could and perhaps should take jurisdiction.
 

 Similarly, if the case presented a central legal issue, the resolution of which would materially aid the disposition of the case on remand, that too might be an instance when this court should take jurisdiction.
 
 See, e.g., In re Ellsworth,
 
 722 F.2d 1448 (9th Cir.1984);
 
 cf. Stone v. Heckler,
 
 722 F.2d 464, 467 (9th Cir.1983).
 

 But this appeal does not involve any such "central legal issues." Here, with regard to the counterclaim, the issue is really no more than whether the facts support the claims. The parties do not dispute any legal standard applicable to these factual issues.
 

 [9]
 

 . King contends the offer Stanton made was not legitimate because she did not have the means to pay the offered purchase price. Another offer apparently proposed payment in the form of shares of stock in an investment company, the value of which King asserts was uncertain.